2bu215:
103  73

CASE 53—PETITION EQUITY—SEPTEMBER 19.

# Willis and wife vs. Woodward.

### APPEAL FROM CAMPBELL CIRCUIT COURT.

A married woman having the title to lots, for the purpose of investing the title to said lots in her husband, joined with him in a conveyance thereof to a third party, who thereupon conveyed the same to the husband. Such deeds must be considered as sufficient to pass the title to the lots to the husband, unless they contain something in their recitals which would prevent them from having that effect, or that their execution was procured by coercion of the husband, and they are not therefore the free and voluntary act of the wife. The deed being acknowledged by the wife as prescribed by law, it must be considered and regarded as her free voluntary act, and effectual for all purposes, until the contrary is shown by satisfactory evidence.

E. W. HAWKINS,                              For Appellants,
                    CITED—

Civil Code, sec. 445.

11 Howard, 325; VanRansalear vs. Kearney.

4 Peters, 1; Carver vs. Jackson.

1 Greenleaf's Evidence, 23.


T. N. & D. W. LINDSEY and J. R. HALLAM,   For Appellee,
                    CITED—

9 B. Mon., 547; Scarborough vs. Watkins and wife.

18 B. Mon., 908; Todd's heirs vs. Wickliffe.

Story's Equity Jurisprudence, 764–5.

Clancy on Married Women, 350.

17 Penn. R.; Garrigens vs. Harris.

4 Monroe, 375; Peddicord, &c., vs. Gibson's adm'rs.

5 J. J. Marshall, 570; Lyne vs. Bank of Kentucky.

1 Spence's Equity Jurisprudence, 625.

5 *Dana*, 184; *Cruise vs. Christopher.*

13 *Vesey, jr.*, 51; *Lady Ormond vs. Hutchinson.*

14 *Vesey*, 273; *Hugenin vs. Baseley.*

CHIEF JUSTICE PETERS DELIVERED THE OPINION OF THE COURT:

In 1857 the appellee was possessed of the legal title to two lots in the city of Newport, one of which had been conveyed to her by Patrick Moran and wife, in 1854, and the other was conveyed to her by Henry K. Lindsey and wife, in 1856. At the date of these conveyances she was the wife of Capt. Benjamin Woodward.

On the 19th of September, 1857, appellee united with her husband in the conveyance of said lots to G. Frank Hayman, and on the same day Hayman and wife conveyed them to her husband, the said Benjamin Woodward.

The deeds from Woodward and wife recite that the lots were purchased and paid for by the husband, and were conveyed to the wife, for certain family reasons which then existed, but which, at the date of the conveyances to Hayman, had ceased to exist, and that they were then made to him, so as to enable him to convey said lots to Benjamin Woodward, whereby he would be invested with the legal title.

It appears in evidence, that in January, 1858, Benjamin Woodward, while acting as captain or pilot on the steamer Fanny Fern, was killed by the explosion of the boiler.

On the 30th of March, 1864, this action was brought by the appellee, his widow, against Willis and wife, Mrs. Willis being the only child and heir at law of Woodward, who died intestate, to set aside said conveyances, and to be restored to the legal title to said lots; and having been successful in the court below, Willis and wife now seek to reverse said judgment.

Appellee alleges in her petition that "the purchase money for said lots was fully paid from her own means, and without any means of her husband, Benjamin Woodward, being applied thereto; that at the time of her marriage with him she was the widow of Joshua Crawford, deceased, and the mother of four children, the issue of her first marriage ; that there is no issue of her marriage with Capt. Woodward; that he had one daughter by a former wife, who had intermarried with J. D. Willis. She further charges, that on the 19th day of September, 1857, she was induced by the violent threats, undue influence, and persuasion of her said husband, to join with him in conveying said lots to one G. Frank Hayman without consideration, the object being to vest the title thereto in the said Benjamin Woodward by a conveyance from said Hayman to him, in fraud of the rights of plaintiff, which was immediately done."

Married women are authorized by legislative enactments, in conjunction with their husbands, to execute deeds of conveyance, and when made and acknowledged by the parties, with the prescribed legal formalities on the part of the wife, and recorded, are as effectual for every purpose as if made by a single woman.

The deeds to Hayman, then, must be considered as sufficient to pass the title to the lots to him, unless they contain something in their recitals which would prevent them from having that effect, or that their execution was procured by the coercion of the husband, and are not, therefore, the free, voluntary acts of the wife.

As an auxiliary to appellee's claim to the relief sought, it is alleged in her petition, and insisted on in argument, that she paid of her own means to the vendors of said lots the whole of the consideration therefor, which is denied in the answer. The consideration for these lots

was paid in money; and without going into a minute analysis of the evidence on the subject of her *ability* to pay the same, it may be stated that it is incontrovertibly shown that, at the death of her first husband, she was in a very destitute condition, with four infant children to support; and if any estate had come to her from her said husband or her father, or from any other source, the facts could have been shown most probably by record evidence—certainly by evidence more satisfactory than has been adduced. Nor does it appear that her pursuits before her marriage with Woodward were sufficiently remunerative to enable her to support herself and chil-. dren, and save enough besides to pay for said lots; and there is no evidence that she carried on a separate business or had a separate estate after her second marriage, by which she would have been enabled to pay for them; while, on the other hand, it is shown that Woodward's business was that of pilot or captain of steamboats; that his services as such commanded high prices, out of which he could pay for said lots; and it cannot be denied that a portion of the price of the one purchased of Lindsey was unpaid at his death, for which Lindsey held *his* note, and the same was paid out of the *assets* of his estate after his death, of which Mrs. Woodward was fully apprised; and the deeds from Woodward and wife to Hayman recite that the consideration for said lots was paid by Woodward. Indeed, from all the facts shown, there can scarcely be a doubt on the subject as to who paid the money.

We come now to the vital question in the case. Was Mrs. Woodward coerced to execute the deeds by the threats and undue influence of her husband?

Their execution and acknowledgment on her part are in the mode prescribed by the statute on the subject; and

having been done *in that* way, they must be considered and regarded for all purposes as the free, voluntary act of appellee, and effectual for all purposes until the contrary is shown by satisfactory evidence.

Hayman, the deputy clerk, who took her acknowledgment, proves that it was done in the absence of the husband; that he explained the contents of the deeds to her; that she took the pen and signed them, and then acknowledged them, answering all the questions propounded to her by him in the affirmative, and that if she had not done so he would not have certified the acknowledgment.

The deeds were acknowledged on the 19th of September, 1857; Capt. Woodward was killed in January, 1858; shortly thereafter appellee, his widow, administered on his estate; afterwards a suit was brought against her by appellants for a settlement of the estate of decedent; and this litigation, as is shown in this record, was carried on with perhaps more than usual hostility and mutual distrust. It was of some duration; and, notwithstanding appellee, in her petition, alleges that the purchase money for said lots was fully paid from her own means, and without any of the means of her husband being applied thereto, it is shown conclusively that a portion of the assets of Capt. Woodward, which came to her hands as his personal representative, were applied to pay Lindsey a note he held on said Woodward at his death for an unpaid balance of the purchase money due him for one of the lots now in controversy. What reasons may have existed for not asserting a claim to those lots, and to have said deeds set aside in that litigation, do not appear; none that are satisfactory are named; and whether it was to be postponed until all the purchase money was paid, is left to conjecture.

More than six years had elapsed from the death of Capt. Woodward before this suit was brought. During all that time appellee resided in the same city in which the property is located; all the evidences of her rights were there, and she labored under no disability as we must assume. If the statute of limitations had been relied upon (*section* 7, *article* 1, *chapter* 63, 2 *V. R. S., p.* 124), it would have been a complete bar to her claim; but as it is not specially pleaded, it may not, therefore, operate as a legal bar; still the delay in asserting her claim, not satisfactorily accounted for, with other facts and circumstances, some of which have been named, constrain this court to the conclusion that appellee has failed to make out such a case as would authorize a court of equity to set aside the deeds and invest her with the title to said lots.

Wherefore, the judgment is *reversed*, and the cause remanded, with directions to dismiss the petition.