CASE 8— PETITION EQUITY—JANUARY 27.

# Wicks, Etc. v. Dean, Etc.

APPEAL FROM M'CRACKEN CIRCUIT COURT.

1. HUSBAND AND WIFE—DEEDS BETWEEN—BURDEN OF PROOF.—A wife may, her husband joining with her, convey her property to a third person with the understanding that such person is to convey it to the husband, and the conveyance so made to the husband is valid; and in an action to set aside such conveyance, because of alleged fraud, or undue influence, the burden of proof is on the plaintiff upon that issue.

2. EVIDENCE—TRANSACTIONS WITH DECEDENT.—In a suit by the heirs of a deceased woman to set aside certain deeds made by her to her husband on the ground of fraud, or undue influence, it being alleged that all the property was paid for with the decedent's money, although the surviving husband was not competent to testify as to any transaction with his deceased wife, he was competent to testify on the issue as to whether her money had paid for the property, that he had money when he was married and continued to make money thereafter, and had lived economically and saved it.

3. EVIDENCE.—The plaintiff having sought to show that the decedent's capacity to make the conveyance was impaired by the use of morphine, and that it was principally administered by her husband, and that he, while she was in that condition, influenced her to make the conveyance, it was proper for the husband to be permitted to testify as to the extent to which he administered morphine to her and its effect on her.

4. ATTORNEY AND CLIENT—TESTIMONY OF ATTORNEY.—The provision of section 606, subsection 5 of the Civil Code that "no attorney shall testify concerning a communication made to him in his professional character by his client, or his advice thereon, without the client's consent," will not prevent an attorney from testifying as to the condition of his client's mind when she instructed him to prepare certain deeds.

5. PRACTICE IN COURT OF APPEALS.—This court in an equity case in reviewing the judgment of the lower court will only consider that

part of the evidence which is competent, and determine from that alone whether the judgment of the lower court was rroneous.

6. EQUITY—IMPOSING CONDITIONS.—The appellant being daughter of the decedent, and seeking to set aside as fraudulent a conveyance made by her, and having accepted under that same conveyance a part of the land embraced therein, will not be granted the relief sought in any event, except upon condition that she reinvest the defendant who had-title to that portion of the property which she took under the deed, with title thereto.

CLARENCE DALLAM FOR APPELLANTS.

1. It is clearly established by the evidence that at the time of the execution of the deed to Rouse, Mrs. Dean was, from pain and disease, and on the account of the use of morphine and intense suffering, rendered mentally incapable of disposing of her property, and was easily subject to the improper influence of her husband; at any rate all these things were sufficient to place on him the burden of establishing the validity of the deeds under which he claimed. Starr v. DeLashnutt, 76 Fed. Rep., 907.

2. A transaction between husband and wife will not be upheld, unless it be fair, just, honest and free from every taint of fraud, deception and undue influence. 94 Ky., 64 and 596; 16 Ky. Law Rep., 355.

3. The husband can not testify for or against his wife or against the heir of his deceased wife claiming as her heir. 38 N. E. Rep., 1057.

4. An attorney can not testify as to statements made to him, or transactions had by him with his client, even though that client has since died. 70 Fed. Rep., 895.

HENRY BURNETT ON SAME SIDE.

1. Under the facts and circumstances disclosed by the evidence in this case there are such badges of fraud and coercion and undue influence on the part of the husband that a chancellor should not hesitate to set aside the deeds and restore to the daughter her right of inheritance. The court will only uphold such conveyance between husband and wife where they are free from suspicion of fraud, or coercion, or improper influence. Scarborough v. Watkins, 9 B. M., 545; Story's Equity Jurisprudence, 764; Clancy on Married Women, 350; Willis v. Woodward, 2 Bush, 215; Kennedy v. Tenbroeck, 11 Bush, 248; Menne's Heirs v. Menne, 15 Ky. Law

Wicks, Etc., v. Dean, Etc.

Rep., 774; Parrot v. Kelly, 79 Ky., 490; Golding v. Golding, 82 Ky., 51.

L. D. HUSBANDS FOR APPELLEE.

1. The evidence shows that nearly all the property was purchased with the money made and saved by Dean, and that the trans-action between him and his wife was voluntary upon the part of the wife, and not brought about by his fraud or undue influ-ence, and was all in perfect good faith    Under these circum-stances the transaction between husband and wife will be upheld. Scarborough v. Watkins, 9 B. M., 547; Todd v. Wickliffe, 18 B. M., 906; Willis v. Woodward, 2 Bush, 218.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

The appellant, Jessie Wicks, is a daughter of Josephine Dean, the issue of her marriage with one Dan Eley. She afterwards married the appellee, John Dean. Mrs. Dean is the daughter of Mrs. Sarah C. Trowell, from whom she inherited some estate. She acquired by purchase at com-missioner's sale (which was ordered sold in a suit to settle her mother's estate) what is known as the "old homestead," on Jefferson street, Paducah, Ky., and also what is known as the MacKnight lot. The purchase price of these lots was $2,155. A deed was made to Mrs. Dean for this property on January 12, 1891. On January 30, 1890, there was conveyed to John and Josephine Dean what is known in this record as the Parker lot, in consideration of $1,200. On May 20, 1890, there was conveyed to them what is known as the Herndon lot, in consideration of $325. On July 24, 1890, there was conveyed to them what is known as the Spriggs lot, in consideration of $100. These deeds were to Dean and his wife, Josephine. They held the last three lots until June 28, 1892, when Dean and wife made a deed to James Lang, by which they conveyed them to him. Lang then

conveyed the three lots to the appellee, John Dean; thus the matter stood until August 30, 1893, when Dean and wife made a deed to one Rouse, by which they conveyed to him what is known as the "old homestead" property, and the Parker lot. Rouse then conveyed the "old homestead" property to John Dean, and afterwards (but before the death of Mrs. Dean) conveyed the Parker lot to the appellant, Jessie Wicks. On November 18, 1893, Mrs. Dean died. It appears that Dean and wife never had any children born to them, so the MacKnight lot passed to the appellant, Jessie Wicks, by inheritance from her mother.

This action was instituted by the appellant, Jessie Wicks, and her husband, to set aside the several conveyances, by which John Dean was vested with a title to the property described. It is alleged that all the property was paid for with the money of Mrs. Dean, and that the deeds which vested John Dean with title to the property, were procured by fraud, coercion and undue influence. The various allegations of the petition may be thus summarized. Outside of the testimony of John Dean, the evidence is not satisfactory as to whose money paid for the various pieces of property except it is certain that part of Mrs. Dean's money or property did pay for the "old homestead" property, and the MacKnight property. From the view we have of the case it is not very important to know whose money was used in paying for the property. John Dean could not testify concerning any communication which occurred between him and his wife during marriage. Neither could he testify concerning any transaction with her except for the purpose and to the extent of affecting one who is living, and who was over

fourteen years of age and of sound mind, and heard the statement or was present when such transaction took place, etc., and testified concerning it, etc.  Section 606, Civil Code of Practice.  He was a competent witness to prove that he had money when he was married, and continued to make money thereafter; and that he had lived economically and saved his money.  It may be added here that he was a competent witness to prove the extent he administered morphine to his wife, and its effect upon her, as the appellant, Jessie Wicks, had testified in relation thereto.

On June 28, 1892, when the conveyance was made to Lang, Mrs. Dean, according to the deeds, owned one-half of the property.  After the careful reading of the record, we have reached the conclusion that there is practically no evidence which tends, in the slightest degree, to show that any sort of influence, improper or otherwise, was brought to bear upon Mrs. Dean to induce her to place the title to her one-half interest in the lots in her husband.

This court has held in numerous cases that the wife, her husband joining her, can convey her property to a third person with the understanding that that person convey it to the husband.  If the conveyance is thus made to the husband, it is valid.  The only way to set aside such a conveyance is to show that it was procured by fraud, coercion and undue influence.  (Scarborough v. Watkins, 9 B. M., 545; Willis and Wife v. Woodward, 2 Bush, 215; Todd's Heirs v. Wickliffe, 18 B. M., 908.)  The rule is also announced that the burden is upon the party assailing the deed to establish the facts which will justify a court in setting it aside, therefore, it may be added, at this point, that the court did not err in ruling that the burden of proof was upon the plaintiff.

At the time the deed was made in June, 1892, to which we have alluded, Mrs. Dean was in good health. The testimony in this record shows that she was a woman of unusual intelligence and ability; and that her husband deferred to her judgment in business affairs. The proof shows that the wife and husband treated each other with great affection and consideration, and the most pleasant relations existed between them. It likewise shows that the mother loved her daughter, and that they maintained the affectionate relations which usually exist between mother and daughter.

At the date of the deed made August 30, 1893, Mrs. Dean was suffering with an incurable disease, which her husband knew, and it is fair to conclude from the evidence that Mrs. Dean was aware of her condition.

The appellant sought to show, by testimony, that her mother's capacity to enter into such a transaction, was impaired by the use of morphine; and that it was principally administered by the husband to allay pain, and whilst in that condition she was influenced by her husband to make the conveyance.

We think that the plaintiff has failed to sustain her charge in that respect. While it is true that morphine was administered to her, we are of the opinion that when she made the deed, she was in full possession of her faculties and knew what she was doing, and the deed but carried out her wishes.

J. G. Husbands prepared the deed to Rouse, and the one from Rouse to Dean. He details in his testimony the circumstances under which the deeds were made. He was the attorney of Dean and wife, and it is claimed by reason of

that fact that his testimony is incompetent; and that he could not detail what occurred without his client's consent.

Subsection 5, section 606, Civil Code of Practice, reads as follows:

"No attorney shall testify concerning a communication made to him in his professional character by his client, or his advice thereon, without his client's consent." . . . Husbands testified as to what Mrs. Dean said on the occasion in question with reference to how she wanted the deeds made. The presumption is that the deeds were made as Mrs. Dean desired them to be made, therefore, Husband's testimony was unimportant as to her directions as to how she wanted the deed made. Without stopping to inquire whether it was competent under the circumstances, for him to prove what she said, it was certainly competent for him to prove the condition of her mind when he was instructed to prepare the deeds. He testified that he had known her a long time, knew her well; that she was a woman of more than ordinary intelligence and business capacity; and that her mind was in its usual condition when she consulted him in regard to writing the deeds. It was competent for him to prove these facts.

This court in Hall & Co. v. Renfro, 3 Met., 53, in construing the fifth subdivision of section 670, old Civil Code of Practice, which is substantially the same as the present Code in relation to the right of attorneys to testify as to communications made to them in their professional character, after quoting the language of the Code, said that:

"In all other cases, an attorney is a competent witness for or against his client. Whether he should, or should not, testify whilst the relation subsists, is a question of professional

propriety, which he alone is to determine for himself, and with which the court has no concern." The facts which we have just detailed to which the attorney testified, were not communications made to him by his client, so under the plain provisions of the Code, it was not incompetent. The plaintiff moved to exclude all the evidence of Husbands, the court overruled the motion. Even if there was some part of Husbands' testimony which was not admissible, the court properly overruled the motion because part of his testimony, as we have indicated, is clearly competent. The knowledge he possessed with reference to the mental condition of Mrs. Dean, is not a communication from his client much less a privileged one. A motion was also made to exclude all the evidence of John Dean because he was the husband of Josephine Dean. Without going into detail as to what part of his testimony was competent and what was not, it is sufficient to say that some of it was. The presumption should be indulged that the court considered only such parts of the evidence of Dean and Husbands as were competent. This presumption should be indulged because the bill of exceptions does not show what part of the deposition of Dean and Husbands were considered by the court. The motion to exclude all of their depositions and the ruling on it, does not present the matter so the court can determine wherein the court erred, if at all, in attaching any importance to incompetent evidence. Besides this is a proceeding in equity, and the court in reviewing the judgment would consider that part of their evidence which was competent, and determine from such part as was competent, and the other evidence in the case whether the judgment of the lower court was erroneous.

We have assumed that the transaction on June 28, 1892, was valid, therefore, Dean owned the Parker lot at the time the conveyance was made to Rouse. The appellant through Rouse, obtained title to the Parker lot. She has neither offered or shown her ability to convey it to Dean; and had the record shown that the deed of August 30, 1893, was procured under such circumstances as would authorize the court to set it aside, the court could do so only upon condition that the appellant reinvested the appellee, Dean, with the title to the Parker lot, besides there is no proof (other than that which is afforded by the recitals in deeds) that the old homestead property was of greater value than the Parker lot.

We are of the opinion that the court below did not err in dismissing appellant's petition, therefore, the judgment is affirmed.